IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| BENJAMIN R. MARQUEZ RODRIGUEZ | § § | |
| Plaintiff, | § § | |
| v. | § § | NO. EP-18-CV-99-MAT |
| ANDREW SAUL,[1] COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | § § § § § | |
| Defendant. | § § | |

## MEMORANDUM OPINION AND ORDER

This is a civil action seeking judicial review of an administrative decision pursuant to 42 U.S.C. § 405(g). Plaintiff Benjamin R. Marquez Rodriguez ("Plaintiff") appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his applications for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act") and supplemental security income ("SSI") under Title XVI of the Act. (Pl.'s Compl., ECF No. 4, at 1). The parties consented to the transfer of the case to this Court for determination and entry of judgment. *See* 28 U.S.C. § 636(c); Local Court Rule CV-72. For the reasons set forth below, the Commissioner's decision will be **AFFIRMED**.

### I. PROCEDURAL HISTORY

Plaintiff was fifty years old at the time of the decision of the Administrative Law Judge

---

[1] Andrew Saul is now the Commissioner of the Social Security Administration. Pursuant to Federal Rule of Civil Procedure 25(d), Andrew Saul is now substituted for Acting Commissioner Nancy A. Berryhill as the defendant in this case.

1

("ALJ"), dated August 1, 2017. *See* (R. 38, 308).[2] His past relevant work includes working as a forklift operator and as a truck driver. (R. 36, 358). On November 14, 2013, Plaintiff filed applications for a period of disability and DIB and SSI, in which he alleged disability beginning on August 15, 2013, due to "lumbar problems/right shoulder tendon." (R. 308–16, 317–20, 368). After his applications were denied initially and upon reconsideration, Plaintiff requested a hearing by an ALJ. (R. 149, 161, 168–69).

On September 17, 2015, a hearing was conducted before the ALJ. (R. 63–77). On November 2, 2015, the ALJ issued a written decision denying benefits at step five of the five-step evaluation process on the basis that Plaintiff was not disabled because he was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy," such as "bakery worker, conveyor line." (R. 123–31). Plaintiff sought review of the ALJ's decision by the Appeals Council who remanded the case to the ALJ, on December 22, 2016, because "[t]he decision does not contain an evaluation of treating source opinions" that are inconsistent with the residual functional capacity for light work as determined by the ALJ. (R. 139). The Appeals Council directed the ALJ to:

> Give consideration to the treating source opinion pursuant to the provisions of 20 CFR 404.1527 and 416.927 and Social Security Rulings 96-2p and 96-5p, and explain the weight given to such opinion evidence. As appropriate, the Administrative Law Judge may request the treating source to provide additional evidence and/or further clarification of the opinion (20 CFR 404.1520b and 416.920).

(R. 139).

On June 20, 2017, a second hearing was held before the ALJ. (R. 45–62). Thereafter, on August 1, 2017, the ALJ issued his written decision finding at step five of the five-step evaluation

---

[2] Reference to the record of administrative proceedings is designated by (R. [page number(s)]).

2

process that Plaintiff was "not disabled" prior to March 31, 2017, but became "disabled" beginning on March 31, 2017, when Plaintiff's age category changed. (R. 37–38). On January 26, 2018, the Appeals Council denied Plaintiff's request for review, thereby making the ALJ's decision the Commissioner's final administrative decision. (R. 1–8).

In this appeal, Plaintiff argues: (1) that the ALJ failed to give proper weight to examining source opinion and failed to follow the Appeals Council's Remand Order and (2) that the ALJ's residual functional capacity finding is not supported by substantial evidence. (Pl.'s Br., ECF No. 18, at 3).

## II. LAW AND ANALYSIS

### A. STANDARD OF REVIEW

The Court's review is limited to a determination of whether the Commissioner's final decision is supported by substantial evidence on the record as a whole, and whether the Commissioner applied the proper legal standards. *Myers v. Apfel*, 238 F.3d 617, 619 (5th Cir. 2001) (citing *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)) (internal quotation marks omitted). Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154, (2019) (quoting *Consol. Edison Co. v. Nat'l Labor Relations Bd.*, 305 U.S. 197, 229 (1938)). It is more than a scintilla, but less than a preponderance. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995) (quoting *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993)). A finding of "no substantial evidence" will be made only where there is a "conspicuous absence of credible choices" or "no contrary medical evidence." *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)) (internal quotation marks omitted).

In determining whether there is substantial evidence to support the findings of the

Commissioner, the Court may not reweigh the evidence or try the issues de novo. *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). The Court may not substitute its own judgment "even if the evidence preponderates against the [Commissioner's] decision." *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (citation omitted). "Conflicts in evidence are for the [Commissioner] and not the courts to resolve." *Spellman*, 1 F.3d at 360 (quoting *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)) (internal quotation marks omitted). If the Commissioner's findings are supported by substantial evidence, "they are conclusive and must be affirmed." *Id.* However, "[t]he ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council." *Newton*, 209 F.3d at 455.

B. FIVE-STEP SEQUENTIAL EVALUATION PROCESS

Under the Social Security Act, "disability" means, in relevant part, the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). This means that:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . .

*Id.* at § 423(d)(2)(A)

The Social Security Administration Regulations (the "Regulations") prescribe a "five-step sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(1) & 416.920(a)(1). If, at any step of the process, the ALJ finds that the claimant

4

is either disabled or not disabled, the ALJ will make his determination as to disability and will not continue with a consideration of the remaining steps. *Id.* at §§ 404.1520(a)(4) & 416.920(a)(4).

At the first step, the ALJ determines whether the claimant is engaged in substantial gainful activity. *Id.* at §§ 404.1520(a)(4)(i) & 416.920(a)(4)(i). If so, the ALJ will find the claimant is not disabled and will not continue to step two. *Id.*

At the second step, the ALJ considers the medical severity of the claimant's impairment(s). *Id.* at §§ 404.1520(a)(4)(ii) & 416.920(a)(4)(ii). If the ALJ determines that the claimant does not have a severe medically determinable physical or mental impairment or combination of impairments that meet the duration requirement, then the ALJ will find that the claimant is not disabled and will not continue to step three. *Id.*

At the third step, the ALJ also considers the medical severity of the claimant's impairment(s), specifically whether the impairment(s) meets the duration requirement and "meets or equals one of [the] listings in appendix 1 of this subpart . . . ." *Id.* at §§ 404.1520(a)(4)(iii) & 416.920(a)(4)(iii). If so, the claimant will be found to be disabled, and the ALJ will not continue to step four. *Id.*

Before proceeding to the fourth step, the ALJ will make a finding as to the claimant's residual functional capacity ("RFC"), "based on all the relevant medical and other evidence" in the administrative record. *Id.* at §§ 404.1520(e) & 416.920(e). A claimant's RFC is the most he can still do despite his physical and mental limitations that affect what he can do in a work setting. *Id.* at §§ 404.1545(a)(1) & 416.945(a)(1). When assessing the RFC, the ALJ will consider *all* of a claimant's medically determinable impairments, not just ones that the ALJ determines are severe. *Id.* at §§ 404.1545(a)(2) & 416.945(a)(2).

5

At step four of the five-step sequential evaluation process, the ALJ considers the RFC assessment and the claimant's past relevant work. *Id.* at §§ 404.1520(a)(4)(iv) 416.920(a)(4)(iv). If the ALJ determines that, considering the RFC, the claimant can still do his past relevant work, then the ALJ will find that the claimant is not disabled and will not continue to step five. *Id.* Finally, at step five, the ALJ considers the claimant's RFC, age, education, and work experience to determine whether the claimant can adjust to other work. *Id.* at §§ 404.1520(a)(4)(v) & 416.920(a)(4)(v). If the ALJ finds that the claimant cannot, then the ALJ will find that the claimant is disabled. *Id.*

C. THE ALJ'S WRITTEN DECISION

In his written decision, the ALJ analyzed Plaintiff's application for disability using the five-step sequential evaluation process set forth in the Regulations. (R. 28–38). Considering the first three steps, the ALJ found that: (1) Plaintiff had not engaged in substantial gainful activity since the alleged onset date of disability; (2) Plaintiff had severe impairments of lumbar radiculopathy, multi-level degenerative disc disease, osteoarthritis, status-post right knee arthroscopic debridement of a medial meniscal tear, status-post right shoulder arthroscopy and partial rotator cuff tear, and right herniorrhaphy to correct inguinal hernia; and (3) Plaintiff's impairments, singly or in combination, did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R Part 404, Subpart P, Appendix 1. (R. 31). Accordingly, before proceeding to step four, the ALJ assessed Plaintiff's RFC.

The ALJ determined that Plaintiff:

> has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) with lifting and carrying of 10 pounds occasionally and less than 10 pounds frequently with the use of a cane to and from and about the workstation, and with occasional balancing, stooping, kneeling, and crouching.

6

(R. 32). In assessing the RFC, the ALJ gave little weight to the opinions of Plaintiff's treating physician and of the non-examining sources who prepared the Disability Determination Services assessments, finding they were not consistent with various parts of the record. (R. 35). At step four of the sequential evaluation process, the ALJ considered the testimony of the vocational expert at the hearing and the assessed RFC and determined that Plaintiff was unable to perform any past relevant work. (R. 36).

At step five, the ALJ noted that on March 31, 2017, Plaintiff's "age category changed to an individual closely approaching advanced age," whereas before that date he was "a younger individual age 45-49." (R. 36). The ALJ noted that Plaintiff "has at least a high school education and is able to communicate in English." (R. 36). Considering the testimony of the vocational expert, the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2, and Plaintiff's age, education, work experience, and RFC, the ALJ determined that Plaintiff "was capable of making a successful adjustment to other work that existed in significant numbers in the national economy, prior to March 31, 2017. (R. 37). Therefore, the ALJ determined that prior to March 31, 2017, Plaintiff was "not disabled." (R. 38). However, the ALJ also determined that Plaintiff became "disabled" on March 31, 2017, when Plaintiff's age category changed, considering his age, education, work experience, and RFC. (R. 37).

D. WHETHER THE ALJ FAILED TO GIVE PROPER WEIGHT TO EXAMINING SOURCE OPINION AND FAILED TO FOLLOW THE APPEALS COUNCIL'S REMAND ORDER

Plaintiff claims that the ALJ erred in his consideration of the opinions of Plaintiff's treating physician, Dr. Easter, by "picking and choosing which restrictions he agreed with and disregarding the rest[.]" (Pl.'s Br., ECF No. 18, at 4). Plaintiff also argues that the ALJ did not comply with the Appeals Council's remand order directing the ALJ to consider Dr. Easter's opinions pursuant to

20 C.F.R. §§ 404.1527 and 416.927, and Social Security Rulings 96-2p and 96-5p, and to explain the weight given and seek additional evidence or clarification if necessary. *Id.* Plaintiff asserts that Dr. Easter's opinions restrict Plaintiff to "less than sedentary exertion, less than an eight-hour workday." *Id.*

Specifically, Plaintiff argues that there is no examining or treating physician opinion of record that contradicts the opinion of Dr. Easter, and, therefore, the ALJ erred by failing to provide the required analysis under 20 C.F.R. § 404.1527 when considering medical source opinions. *Id.* at 5 (citing *Newton*, 209 F.3d at 453). Plaintiff also contends that the ALJ's reliance on Plaintiff's daily activities is insufficient to give little weight to Dr. Easter's opinions. *Id.* at 5–6. Plaintiff argues that the ALJ performed his own interpretation of the medical evidence by picking and choosing the evidence from the record that supports his position, without "relying on any medical opinions." *Id.* at 6, 7. Plaintiff claims these errors have prejudiced him because had Dr. Easter's opinions been given greater weight, the ALJ likely would have found Plaintiff unable to work an eight-hour day, and therefore, unable to perform competitive employment. *Id.* at 7.

In response, the Commissioner asserts that the ALJ is not required to rely on a medical opinion but must make the administrative assessment of the RFC "based on the entire record, including both medical and non-medical evidence." (Comm'r's Br., ECF No. 21, at 5) (citing 20 C.F.R. §§ 404.1545(a) and 416.945(a)). The Commissioner also argues that the ALJ discussed in detail the treatment and surgical records supporting his RFC assessment, which provide evidence contradicting Dr. Easter's opinions. *Id.* at 6–9. Further, the Commissioner contends that the ALJ's discussion demonstrates that he considered the relevant factors in the regulations. *Id.* at 9–10. The Commissioner contends that the ALJ's stated reason for giving Dr. Easter's opinion little weight

along with the discussion in his decision demonstrates that he complied with the Appeal's Council order. *Id.* at 10.

When determining disability, the ALJ will consider medical opinions from acceptable medical sources, including treating physicians, together with the rest of the relevant evidence in the record. 20 C.F.R. §§ 404.1527(a)–(b) and 416.927(a)–(b). A treating source's medical opinion on the issue(s) of the nature and severity of a claimant's impairment(s) will be given controlling weight if the ALJ finds that it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." *Id.* at §§ 404.1527(c)(2) and 416.927(c)(2).

When a treating source's medical opinion is not given controlling weight, the ALJ applies the factors listed in paragraphs (c)(2)(i)–(ii) and (c)(3)–(c)(6) of §§ 404.1527 and 416.927 in determining what weight to give the opinions and provides "good reasons" for the weight given. *Id.* at §§ 404.1527(c)(2) and 416.927(c)(2). "[A]bsent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views, under the criteria set forth in 20 C.F.R. § 404.1527(d)(2)."[3] *Newton*, 209 F.3d at 453 (emphasis in original). These factors include the length, frequency, nature, and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record as a whole, specialization of the physician, and other factors, such as the medical source's understanding of disability programs and evidentiary requirements and the extent to which the

---

[3] The criteria that the Fifth Circuit references at subsection (d)(2) in *Newton* are currently located at subsection (c)(2)(i)–(ii) and (c)(3)–(c)(6) of §§ 404.1527 and 416.927. *Compare* 20 C.F.R. §§ 404.1527 and 416.927 (effective to July 31, 2006) *with* 20 C.F.R. §§ 404.1527 and 416.927 (effective Aug. 24, 2012 to Mar. 26, 2017) *and* 20 C.F.R. §§ 404.1527 and 416.927 (effective Mar. 27, 2017).

9

medical source is familiar with the other information in the claimant's case record. *Id.* at §§ 404.1527(c) and 416.927(c).

There are two opinion forms in the record from Dr. Easter, both dated August 12, 2015. On one form, Dr. Easter opined that Plaintiff was limited to lifting and carrying less than 10 pounds frequently and occasionally, standing/walking for less than 2 hours in an 8-hour workday, sitting for less than about 6 hours in an 8-hour workday with no climbing, balancing, kneeling, crouching, crawling, or stooping. (R. 685–88). On the other form, Dr. Easter opined that Plaintiff had severe lumbar degenerative joint disease, was limited to sitting for 4 hours in a workday with no standing, walking, climbing stairs/ladders, kneeling/squatting, bending/stooping, or lifting/carrying. (R. 682). Dr. Easter also opined that Plaintiff could not lift/carry objects more than 1 pound for more than 2 hours per day. (R. 683). The ALJ gave these opinions little weight because Plaintiff's "own statements reflect the claimant is far more able than Dr. Easter indicates." (R. 35). The ALJ specifically noted Plaintiff's reporting "he was able to perform all areas of personal care autonomously, including dressing, bathing, shaving, and using the bathroom," as well as "performing household chores, driving, shopping, and—perhaps most tellingly—still performed landscaping projects, which most certainly require much bending and carrying." (R. 35) (citing R. 376–79).

As for Plaintiff's first contention, that the ALJ was required to provide an analysis of the 20 C.F.R. §§ 404.1527(c) and 416.927(c) factors, the Court is unpersuaded. The ALJ devoted two and a half pages of his eleven-page decision to a discussion of the medical record evidence, which included medical evidence from treating and examining physicians that noted normal examinations in various areas of strength, gait, and range of motion. (R. 33–35). For example, the ALJ specifically noted Dr. Pacheco-Serrant's examination notes of normal gait and station, normal

muscle bulk and muscle tone, motor strength 4/5 in all major muscle groups of the lower extremities, and normal deep tendon reflexes. (R. 33) (citing R. 832–33). The ALJ also discussed Plaintiff's right knee, right shoulder, and herniorrhaphy surgical procedures, particularly noting that following the procedures Plaintiff healed well and his pain was reduced and/or eliminated, with little to no ongoing treatment. (R. 34–35). The Court finds that these medical records, the ALJ's characterization of which is not disputed by Plaintiff, provides competing first-hand medical evidence that controverts the opinions of Dr. Easter. Accordingly, the ALJ was not required to provide a detailed analysis of the factors set forth in 20 C.F.R. §§ 404.1527(c) and 416.927(c). *Newton*, 209 F.3d at 453.

Furthermore, the ALJ's decision reflects his analysis of the factors set forth in 20 C.F.R. §§ 404.1527(c) and 416.927(c). Both explicitly and implicitly, the ALJ found the opinions of Dr. Easter not consistent with the record as a whole. *See* 20 C.F.R. §§ 404.1527(c)(4) and 416.927(c)(4). Explicitly, the ALJ stated that Plaintiff's own statements are not consistent with the limitations opined by Dr. Easter. (R. 35). Implicitly, the ALJ stated that his RFC assessment is supported by the objective and clinical evidence of record, which he spent two and a half pages discussing, as described in the paragraph, *supra*. (R. 36). As is set forth in his opinion and at the first hearing, Dr. Easter did not treat Plaintiff as a specialist. *See* 20 C.F.R. §§ 404.1527(c)(5) and 416.927(c)(5); (R. 72–73, 688). Furthermore, there are no medical records from Dr. Easter in the record, nor has Plaintiff referred to any, from which to determine the length, nature, and extent of the treatment relationship, nor the supportability by relevant evidence of his opinions, despite the ALJ accepting additional medical records after the case was remanded from the Appeals Council. *See* 20 C.F.R. §§ 404.1527(c)(2)–(c)(3) and 416.927(c)(2)–(c)(3); (R. 43–44, 135–36)

Plaintiff also argues that the ALJ's reliance on Plaintiff's activities of daily living is insufficient justification to disregard Dr. Easter's opinions, suggesting a proper comparison to the standards considered when determining whether a medical improvement exists based on anecdotal evidence. (Pl.'s Br., ECF No. 18, at 5–6) (citing *Schomburg v. Astrue*, No. 3-00-CV-1258-BD, 2009 WL 3734139, at *3 (N.D. Tex. Nov. 9, 2009). The Court is unpersuaded by this argument, as well. Firstly, neither the Regulations nor the Social Security Rulings that the ALJ was directed to apply prohibit such reliance. In fact, Social Security Ruling 96-2p specifically states that "the treating source's medical opinion also must not be 'not inconsistent' with the other 'substantial evidence' in the individual's case record" and that "[d]epending upon the facts of a given case, any kind of medical or nonmedical evidence can potentially satisfy the substantial evidence test." SSR 96-2p, at *3–4. Secondly, Plaintiff relies on a case involving different circumstances and applying a different standard of review without providing this Court with any meaningful analysis of why the Court should find this case persuasive. *See Schomburg*, 2009 WL 3734139, at *3 (citing 20 C.F.R. § 416.994a(c) (involving review of whether a medical improvement exists sufficient to terminate disability benefits where a finding of medical improvement must be based on a change in the symptoms, signs, or laboratory findings).

Plaintiff also argues that the ALJ improperly selected the evidence of record that best supported his decision without relying on any medical opinions. (Pl.'s Br., ECF No. 18, at 7). However, in assessing the RFC, the ALJ is not required to rely on a medical opinion. The RFC is an administrative assessment "based on all the relevant evidence in [the] case record." 20 C.F.R. §§ 404.1545(a)(1) and 416.945(a)(1). The regulation provides that the ALJ "will *consider* any statements about what [the claimant] can still do that have been provided by medical sources[.]" *Id.* at §§ 404.1545(a)(3) and 416.945(a)(3) (emphasis added); *see also id.* at §§ 404.1527(b) and

416.927(b) ("[W]e will always consider the medical opinions in your case record together with the rest of the relevant evidence we receive."). The Court has not found, nor has Plaintiff provided, authority for the proposition that the ALJ is required to do anything more than *consider* a medical opinion in accordance with the relevant regulations when assessing the RFC.

Accordingly, the Court finds the ALJ complied with the Appeals Council order when considering the opinions of Dr. Easter, and furthermore, did not err in considering those opinions.

However, even assuming that the ALJ erred as to one or all of the issues raised by Plaintiff, remand would not be appropriate because Plaintiff has not shown that he was prejudiced. "The party seeking to overturn the Commissioner's decision has the burden to show that prejudice resulted from an error." *Jones v. Astrue*, 691 F.3d 730, 734–35 (5th Cir. 2012). Plaintiff argues that "[h]ad the ALJ properly considered Dr. Easter's opinion and given it greater weight, he likely would have found Plaintiff unable to perform an eight-hour workday, unable to perform competitive employment and therefore disabled." (Pl.'s Br., ECF No. 18, at 7). Yet, Plaintiff does not cite any record evidence to support Dr. Easter's opinions, nor does he dispute the medical record evidence on which the ALJ relies. *See id.* at 4–7. In short, Plaintiff has not made more than a mere allegation that Dr. Easter's opinions are entitled to greater weight, which is insufficient to meet his burden to show that prejudice resulted from an error. *See e.g., Jones*, 691 F.3d at 735 ("A mere allegation that additional beneficial evidence might have been gathered had the error not occurred is insufficient to meet this burden.").

E. WHETHER THE ALJ'S RFC ASSESSMENT IS SUPPORTED BY SUBSTANTIAL EVIDENCE

Plaintiff argues that the ALJ's RFC assessment is not supported by substantial evidence because he did not include Plaintiff's language limitations, specifically "Plaintiff's inability to communicate in English." (Pl.'s Br., ECF No. 18, at 8). Plaintiff also asserts that the ALJ

13

erroneously found that Plaintiff had "at least a high school education" despite acknowledging Plaintiff's testimony that he has a GED in Spanish. *Id.* Plaintiff asserts that the ALJ failed to provide the vocational expert ("VE") "with a hypothetical containing all of Plaintiff's limitations, including Plaintiff's inability to communicate in English." *Id.* According to Plaintiff, therefore, the "ALJ cannot rely on vocational expert testimony that is based on an incomplete hypothetical question," and the ALJ's decision is, thus, not supported by substantial evidence at step five of the five-step sequential evaluation process. *Id.* at 9.

In response, the Commissioner asserts that the record contains evidence supporting the ALJ's conclusion that Plaintiff could communicate in English. The Commissioner specifically "points out that Plaintiff, signing that he was the person who filled out the form, handwrote his responses to the function report in English with little to no errors." (Comm'r's Br., ECF No. 21, at 11–12) (citing R. 375–82). The Commissioner also contends that Plaintiff's reported work history demonstrates he has some ability to communicate in English, as he worked previously as a waiter and in a job where "he stated he wrote, completed reports, or performed such related duties." *Id.* (citing R. 361, 400). The Commissioner also states that "Plaintiff admitted to working several jobs, and only stopped working due to physical problems, not due to issues with communicating in English." *Id.* (citing R. 358, 396). Finally, the Commissioner points to medical notes providing a quote in English of "I have a painful hernia." *Id.* (citing 466).

Furthermore, the Commissioner argues that the ability to communicate in English is a vocational factor which is not part of the RFC assessment. *Id.* (citing 20 C.F.R. §§ 404.1560, 416.960, 404.1560(c), 416.960(c), 404.1564, and 416.964). The Commissioner also states that Plaintiff's attorney did not challenge the ALJ's finding at the hearing and "only asked the VE how inability to read and write in English—but not otherwise having a completed [sic] inability to

communicate in English—would affect the proffered jobs." *Id.* at 12–13 (citing R. 61). For these reasons, the Commissioner argues that the record supports the ALJ's finding that Plaintiff could communicate in English, and therefore, the step five finding is supported by substantial evidence. *Id.*

As defined in 20 C.F.R. §§ 404.1545(a)(1) and 416.945(a)(1), the RFC is "the most [a claimant] can still do despite [his physical and mental] limitations" caused by the claimant's impairments and any related symptoms. Pursuant to 20 C.F.R. §§ 404.1564(b)(5) and 416.964(b)(5), the inability to communicate in English is an educational factor. Educational factors are considered at step five of the five step sequential evaluation process along with the RFC. *Id.* at §§ 404.1520(a)(4)(v) & 416.920(a)(4)(v). Accordingly, the ALJ did not err in not including any language limitations in the RFC.

Furthermore, of Plaintiff's three citations to the record in support of Plaintiff being unable to communicate in English, the Court has found that only one of those citations unqualifiedly supports that finding. *See* (R. 367) (Adult Disability Report). The other two citations do not demonstrate that Plaintiff is entirely unable to communicate in English. *See* (R. 32, 50) (testifying that he went to public school in El Paso for a short period of time to study English, that he can read small words in English, and that he can successfully buy bread, milk, and cheese at a grocery store if given that list in English).

As to the matter of Plaintiff's educational level, Plaintiff claims that the ALJ's decision contains the error that Plaintiff has "at least a high school education" when in fact he has a GED. (Pl.'s Br., ECF No. 18, at 8). However, Plaintiff does not claim that the hypothetical posed to the VE was incorrect. The transcript of the hearing reflects that the VE received and reviewed Plaintiff's vocational records prior to the hearing and the ALJ's hypothetical asked the VE to

"[a]ssume a hypothetical individual the same age, education, and work experience as our claimant . . . ." (R. 56–57). Plaintiff has not cited any other portion of the record erroneously suggesting that Plaintiff had a high school education.

For these reasons, Plaintiff has not shown that the ALJ's RFC or step-five finding were erroneous or not based on substantial evidence. However, to the extent that the it was error for the ALJ to state in his written decision that Plaintiff has "at least a high school education" instead of saying that Plaintiff has a GED, Plaintiff has not made a showing that any such error prejudiced him. *See Jones*, 691 F.3d at 734–35.

### III.  CONCLUSION

For the reasons set forth above,

**IT IS ORDERED** that the decision of the Commissioner will be **AFFIRMED**.

**SIGNED** and **ENTERED** this 26th day of September, 2019.

MIGUEL A. TORRES
UNITED STATES MAGISTRATE JUDGE